Moncure, J.
after stating the case, proceeded :
It was contended by the counsel for the appellants in this case, that conceding that the bond of Tomkies was assigned by West to Harrison’s executors in payment of a debt due by Grymes to them, and that they used due diligence to recover the amount of the bond, but failed to do so by reason of its being satisfied by a debt due by Grymes to Tomkies; still they would have no claim to relief, even in equity, against Grymes’ estate ; and would have to rely alone on the recourse which his contract of assignment might give them against West individually.
It will be a sufficient answer to the above proposition to say, that if the bond of Tomkies was satisfied *49 by a debt due by Grymes to Tomkies, it was a debt of the highest dignity; being due by Grymes, who was executor of John Robinson, to Tomkies, as assignee a legacy given by said Robinson to his daughter Mrs. Wyatt. This debt was not charged to the estate of J # ° Grymes in the administration account of West; and having, in effect, been paid by Harrison’s executors, they are entitled to be substituted in equity to the place of the creditor, and to have the debt, to the extent to which they are entitled to it, paid out of the estate of Grymes.
It was further contended, that if Harrison’s executors could have had any recourse against the estate of Grymes for the amount of Tomkies’ bond, it could only have been on the terms of using due diligence to collect the bond ;' and that they did not use due diligence, in as much as they consented to the decree perpetuating the injunction of the judgment on the bond, without which consent the injunction would not have been perpetuated.
It is not pretended that there was any want of diligence on the part of Harrison’s executors, except in giving their consent to the decree of perpetuation. They seem to have been prompt, not only in asserting their claim against Grymes’ estate on the day of sale, but in suing on the bond of Tomkies shortly after it became due, and obtaining a judgment at law, and then a judgment on a forthcoming bond, when they were enjoined from further proceedings. They promptly filed their answer to the bill of injunction, and moved to dissolve it; but their motion was overruled, and an account was ordered. Afterwards, by consent of parties, the cause came on to be heard, the same account settled in another case was taken as the account in the injunction suit, and the injunction was dissolved. Whether it would have been dissolved but for such consent, it is impossible to say, and unnecessary to *50 decide. There was filed with the bill an affidavit of Wyatt, the only child and distributee at law of the Mrs. Wyatt, sustaining its allegation; to the reading of which affidavit as evidence no exception was taken. The record of the suit of Wyatt & wife v. Grymes, in the County court of Middlesex, was not an exhibit in the injunction suit, and had not then been discovered. It is true the answer of West denied the equity of the bill, and was sustained in part by a deposition. In the condition in which the case was, the injunction should, I think, have been dissolved. But.the court did not think so, and overruled the motion for that ^purpose, and ordered the account. This was an indication of the opinion of the court, that if upon taking the account, Grymes should be found to owe as much on account of the legacy as the amount of the judgment, the injunction should be perpetuated. And when afterwards the same account was taken in another suit of another legatee of Robinson, and it was thereby ascertained that Grymes had received ample estate of Robinson to pay all his legacies, the representatives of West and of Grymes, who were defendants in the injunction suit, doubtless wishing to save the trouble and expense of retaking the same account, and believing that there was at least as much due on the legacy to Mrs. Wyatt as was equal to the amount of the judgment against Tomkies, consented to the perpetuation of the injunction. There was nothing then in the case to show that any part of the legacy had been paid. West had said in his answer that he had a voucher for the payment of one hundred pounds, and that it was probable nothing was due on account of the legacy; but there was no proof to sustain these allegations.
And when the cause came on to be heard, it presented but one difficulty; and that was in regal’d to the right of Tomkies to have his bond set off against *51 the legacy. So far as Grymes’ estate was concerned, it was simply a question whether so much of the legacy as was equal to the amount of the bond be paid to Harrison’s executors or some other person, If the injunction should be perpetuated, it would be due to Harrison’s executors s If dissolved, to Tomkies, or some other person. It was, therefore, of no consequence to Grymes’ estate whether it was perpetuated or dissolved. It was desirable of course to end the litigation; and it could best be ended by a consent decree; to which, it seems from the record, the consent of Harrison’s executors was obtained. The representatives of West and of Grymes seem, therefore, to have acted in good faith in consenting to the decree. Certainly there is nothing to impugn the good faith of Harrison’s executors in giving their consent, if in fact they did give it; as must be taken to be the fact, since it so appears by the record. They might lose, but could not gain, by giving their consent. By doing so, they gave up all claim against Tomkies, and consented to retain only their recourse against Grymes’ estate. They could safely do this if they chose, with the consent of the representatives of West and of Grymes. An assignee may safely be governed by the instructions of the assignor in the management of the assigned claim: and ordinarily he could not disregard them without endangering his recourse against the assignor. When an obligor in an assigned bond enjoins a 'judgment on the bond on the ground of some equity existing between himself and the assignor, the assignee is generally ignorant of the facts, and leaves them to be litigated between the obligor and assignor. He has a right to require strict proof of the facts, because he has a right to enforce the bond if due, as well as to have his recourse against the assignor. But he may, if he choose, waive the former right and retain the latter, if the assignor admit the ground of equity and consent *52 to a decree of perpetuation. The consent of the assignee to the decree has no other effect than as a waiver of his right to proceed further on the bond, and cannot aifect his recourse against the assignor, who also conseil^ec^ Nothing would be plainer than this in a case jn which an assignor is acting in his own right, and there can be no difference in a case in which he is acting as administrator; supposing him to act in good faith, or that the assignee has no notice or reason to believe that he is acting otherwise. An administrator has an lindoubted right to confess a judgment, or consent to a decree, if he believes that the interest of the estate he represents requires it. Whether, therefore, the injunction would have been perpetuated or not without the consent of Harrison’s executors, yet as West’s and Grymes’ representatives also consented, and as all parties seem to have acted in good faith in the matter, Harrison’s executors did not thereby forfeit their recourse against the estate of Grymes, but became entitled, by the perpetuation of the injunction, to demand of that estate the amount of the judgment against Tomkies.
It was further contended, that the right of Harrison’s executors, if any, to have recourse against Grymes’ estate, accrued at the time of the perpetuation of the injunction in 1818, and could not be enforced in the injunction suit, but only by a new and independent suit; so that when the agreement of compromise was made in 1828, on which this suit was brought, the claim of Harrison’s executors was barred by the act of limitations.
It is true that the right of Harrison’s executors to have recourse against Grymes’ estate accrued at the time of the perpetuation of the injunction; but it is not, I think, true that such right could not be enforced in the injunction suit. I think the case came within the reason .and operation of the rule, .that “ where a *53 case is made out between defendants by evidence arising from pleadings and proofs between plaintiffs and defendants, a court of equity has a right and is bound to make a decree between the defendants.” See 2 Rob. Pr. 397, and the cases cited; Fox v. Taliaferro, 4 Munf. 243; Dades’ adm’r v. Madison, 5 Leigh 401. Though a suit be disposed of as to the plaintiff, it may be retained until proper accounts can be taken, in order to render to one of the defendants the relief to which he may be entitled against the other. Morris &c. v. Terrell, 2 Rand. 6. A defendant may in some cases object to a decree against him in favor of his co-defendant, on the ground that there is no issue made up between them, and their peculiar matters of difference have not been ascertained and settled. But the party entitled to make such objection may certainly waive it, and consent to a decree against him; and it may often be his interest to do so. In this case both West’s administrator and Grymes’ administrator (Healy) consented, not only to the perpetuation of the injunction, but to a decreel “that the defendant George West settle the transactions of his intestate on the estate of Philip L. Grymes, and that the defendant George Healy also settle his transactions on the estate of the said Philip L. Grymes, before one of the commissioners” of the court, who was directed to settle, state and report the same. This decree could only have been made on the admission of the administrators of West and Grymes, that the estate of Grymes was liable to Harrison’s executors for the amount of the enjoined judgment, and by a decree in that suit, so soon as it could be ascertained, by a settlement of the accounts, that there were sufficient assets to meet the liability. It is a mistake to suppose that the injunction suit was brought, not only to enjoin the judgment, bnt also to recover the balance of the legacy claimed by Tomkies. A suit had been brought by *54 Tomkies for that legacy, and was pending when the injunction suit was brought. And the only object of latter suit was to enjoin the judgment on the assigned bond until a decree could be obtained in the other suit, and to obtain relief to the extent of that judgment. When the injunction was perpetuated, Tomkies obtained all the relief which he sought, or to which he was entitled, in the injunction suit. Its further prosecution, therefore, could only have been for the benefit of Harrison’s executors. This suit was pending for the benefit of Harrison’s executors when the agreement of compromise was made in 1828, and their claim was not then barred by the act of limitations.
It was further contended, that the agreement of 1828 is of no effect: 1. Because an administrator can create no new cause of action, nor revive an old one, against his decedent’s estate. 2. Because the agreement was made on the mere representation of the counsel of Hamson’s executors, which, though not fraudulent, yet tended to mislead and did mislead the administrator of G-rymes; and in ignorance of the fact that the decree of perpetuation was by their consent, and of the existence of the record of the suit of Wyatt & wife v. Grymes in Middlesex county court. 3. Because it was founded on no consideration, and was intended to give no new remedy to Harrison’s executors, in case it should not be performed by Braxton, but leave them to resort to such remedies as they had, if any, when the agreement was entered into.
As to the first objection, it is certainly true, as a general rule, that an administrator can create no new cause of action against his decedent’s estate. But he has all the powers which are necessary to a proper discharge of the duties of his office. He may make settlements and compromises with creditors of the estate, and give them confessions of judgment; and *55 though he may thereby render himself liable for a devastavit, yet they will be entitled to the benefit of his acts, if they deal with him in good faith. He submit to arbitration matters in dispute in respect of the personal estate, and render it liable for the per- „ „ L formance of the award. 1 Lomax on Ex’ors 356. As was said by Judge Cabell in Wheatley v. Martin's adm'r, 6 Leigh 62, 71, “It is competent to an executor or administrator to submit to arbitration any controversy concerning the estate, whether the estate claims to be a debtor or creditor. This results, necessarily, from the full dominion which the law gives him over the assets, and the full discretion which it vests in him for the settlement and liquidation of all claims due to or from the estate. And although a mere submission to arbitration will not bind the executor or administrator personally, to pay the sum awarded out of his own estate, yet the award is binding on him in his fiduciary character, and consequently on the assets of the estate which he represents. Pearson v. Henry, 5 T. R. 6; Lyle v. Rodgers, 5 Wheat. R. 394.” An executor or administrator may be sued as such, on promises to pay a debt of the estate. A count, on an account stated by a defendant as executor respecting moneys due from the testator, or from the defendant as executor, maybe supported, and joined with counts on promises by the testator. Chitty on Contr. 275; 1 Chitty’s Plead. 275; Secar v. Atkinson, 1 H. Bl. 102; 2 Saund. 117 e, note 2; Whitaker v. Whitaker, 6 John. R. 112; Carter v. Phelps' adm'r, 8 Id. 343. This doctrine has been fully recognized in Virginia. Epes' adm'r v. Dudley, adm'r, 5 Rand. 437; Bishop v. Harrison's adm'r, 2 Leigh 532. In the latter case Judge Cabell said, “It is perfectly clear that in an action against an executor or administrator, such counts,” that is, counts on promises by the executor as such, and counts on promises by the testator, “may be *56 joined; and that that is the proper mode of declaring* against executors or administrators to save the statute limitations.” See also 2 Lomax on Ex’ors 419. Whether before the Code took effect, an executor or administrator might have revived a debt barred by the ° J act of limitations, is -a question which may admit of controversy, and about which there is some conflict of authority. The cases of Peck v. Botsford, 7 Conn. R. 172; Fritz v. Thomas, 1 Whart. R. 66; and possibly Thompson v. Peter, 12 Wheat. R. 565, decide or assume- that he could not. In all these cases the debt had been long barred when the promise was made; and vague and loose admissions were relied on as evidence of a promise, which might not have been sufficient even if made by the party who owed the debt. The observations of the court should be taken in reference to the cases in which they were made. Chief Justice Marshall, in saying, in Thompson v. Peter, that “declarations against him,” the .executor or administrator, “ have never been held to take the promise of a testator or intestate out of the act; indeed the contrary has been held;” surely did not mean to say that an executor or administrator could not be sued on his promise to pay a debt of his testator or intestate not barred at the time of making the promise, and that such promise would not prevent the operation of the act; for he knew that the law was well settled otherwise. He probably only intended to say that mere declarations, such as were proved in that case, and as contradistinguished from a promise of an executor, had never been held to take the promise of the testator out of the act. Chief Justice Gribson did not mean to say so in Fritz v. Thomas, for he had expressly said otherwise in Collins v. Weiser, 12 Serg. & Raw. 97, in which he held that an administratrix was liable as such on an implied promise for money paid', laid out and expended. His remarks in Fritz v. Thomas, in regard to *57 the danger of making an estate liable on vague and indefinite admissions and promises of the executor or administrator, who is often ignorant of the transaction, are certainly very just; and courts and juries should be cautious in weighing the evidence of such admis- ■ it-. t-t sions and promises. Admissions which would have been held sufficient to take a debt due by the person making them out of the statute, have been held insufficient for that purpose when made by an executor or administrator.
In Tullock v. Dunn, 21 Eng. C. L. R. 478, Chief Justice Abbott said, “ As against an executor, an acknowledgment merely is not sufficient to take a case out of the statute, there must be an express promise.” 2 Lomax on Ex’ors 418. But that an executor or administrator might be sued as such on his promise to pay a debt of his testator or intestate not barred at the time of making the promise, is too well settled to admit of controversy. In this case, when the agreement was made there was, as I have attempted to show, a debt due by Chymes’ estate to Harrison’s executors, not barred by the act of limitations, but in a course of continued prosecution from the instant of the accrual of the cause of action. By the decree perpetuating the injunction and directing a settlement of the administration of Cry mes’ estate, that estate was rendered liable, in whosesoever hands it might come, for the claim of Harrison’s executors. A judgment against an administrator, even though it be confessed by him, may be revived against an administrator de bonis non. A suit may be brought against the latter on a promise made by the former to pay a debt of his intestate. Bishop v. Harrison's adm'r, 2 Leigh 532. “ It is clearly competent to an executor,” says Judge Cabell in that case, “ by his promise to pay a debt of the testator, to exempt the case from the operation of the statute of limitations ; and it is no devas *58 tavit in Mm to do so. If the executor die or he remove^ before he has paid the debt, it still remains a debt due from the testator; and the obligation to pay it devolves on the administrator de bonis non, who comes in the place of the executor, and is the representative of the testator.” When, therefore, Healy, by whose consent the decree had been rendered, was removed from the administration, and Braxton was appointed administrator de bonis non, Harrison’s executors had a right to have the suit revived against the latter, and accordingly sued out a scire facias for the purpose. In this state of things Braxton, who was suing Healy and his securities for the assets in his hands, and was expecting soon to recover them, and who also, in right of his wife, was sole residuary devisee and legatee of Grymes, agreed, on certain terms, to pay the debt to Harrison’s executors out of the assets when recovered. I think the agreement is clearly binding upon him as administrator of Grymes, unless it is invalid on the second and third objections made to it, or either of them.
As to the second objection, that the agreement was made on the mere representation of the counsel of Harrison’s executors, and in ignorance of the fact that the decree of perpetuation was made by their consent, and of the existence of the record of the suit of Wyatt & wife v. Grymes. May, the counsel of Harrison’s executors, was guilty of no fraud or misrepresentation, and Braxton was not taken by surprise, in making the agreement. After the suit of Tomkies v. West had been removed from Williamsburg to Richmond, May was retained to prosecute it as counsel for Harrison’s executors. He examined the case, and wrote to Braxton in December 1826, stating his views of it, and proposing an agreement, saying that his client was “ old and averse to trouble and litigation.” The agreement was accordingly made about a year there *59 after. In the letter, nothing was said about the consent of Harrison’s executors to the decree of perpetuation. I have attempted to show that such consent, given without fraud, which is not imputed to them, did not affect their right to recourse against Gfrymes’ estate. It is probable that May had not adverted to the fact, or did not deem it material, when he wrote the letter. But the fact was known to Braxton before he entered into the agreement, as is proved in May’s deposition. Braxton had ample time and opportunity to make himself acquainted with all the facts. He appears to have done so, at least so far as to examine the record in Tomkies v. West, which was the only source from which May professed to derive his information. May proves that Braxton and himself examined the papers, on at least two different days, before they entered into the agreement.
In Braxton’s letters to Harrison, written in November 1838 and October 1829, nearly one and two years after the date of the agreement, the former expresses his satisfaction therewith, and his desire and intention to perform it on his part. It is needless to enquire how far the record of the suit of Wyatt & wife v. Grymes tends to show that the legacy or any part of it had been paid by Gfrymes in his life time, _or what would have been its effect, had a copy of it been filed as evidence in the suit of Tomkies v. West when the consent decree was rendered. When that record was discovered by Braxton, more than ten years had elapsed since the decree of perpetuation, and several years since the date of the agreement; and it was then too late to give it any effect on either. It would have been too late to affect the agreement, even if it had been a compromise of a doubtful claim. The compromise of a doubtful title, when procured without such deceit as would vitiate any other contract, concludes the parties, though ignorant of the extent of their *60 rights. Per Gibson, chief justice, in Hoge v. Hoge, 1 Watts’ R. 163, 216. As was said by the master of the rolls in Pickering v. Pickering, 2 Beav. R. 31, 17 Eng. Ch. R. 31, “ When parties whose rights are <tues^ona^)^e have equal knowledge of facts, and equal means of ascertaining what their rights-really are, and they fairly endeavor to settle their respective claims among themselves, every court feels disposed to support the conclusions or agreements to which they may fairly come at the time, and that, notwithstanding the subsequent discovery of common error.”
As to the third and last objection, that the agreement was founded on no consideration, and was intended to give no new remedy to Harrison’s executors in case it should not be performed by Braxton, but leave them to resort to such remedies as they had, if any, when the agreement was entered into. If, at the date of the agreement, Grymes’ estate was already liable to Harrison’s executors for the amount of the judgment against Tomkies, as I have before endeavored to show, then the existence of that liability was of itself a sufficient consideration for the agreement; it being in effect an account stated by an administrator of a debt due by his testator, and a promise to pay the amount out of the assets; which, we have seen, is a good cause of action against an administrator in his representative character. But even if that liability had been doubtful, it was at least a subject of controversy in a pending suit at the time the agreement was entered into, and was a good consideration for a compromise. “ There can be no doubt that the resignation of a colorable claim, conflicting with that of another person, and the settlement of the dispute between the parties without suit, constitute a good consideration;” and “in these cases, inequality of consideration does not, of itself, form any objection.” Chitty on Contr. 26. But it is said there was in effect no consideration *61 in this case, the promise being to pay the entire debt claimed by Harrison’s executors. The promise, it will be observed, was not to pay the debt out of the estate of Braxton, but out of the assets of his testator when enough for the purpose should come to his hands. And, out of abundant caution, it was further expressly declared in the agreement that nothing therein contained should be construed to bind the administrator of Grymes in any other than his representative capacity. What would be a reasonable compromise for the administrator to make on account of his testator’s estate, was a question which depended upon all the circumstances. If Harrison’s executors had confidence in their claim, they could not be expected to give much, if any of it, up; or to do more for the sake of ending litigation than give a little more time for payment; especially as the security of the debt was not to be increased. And if Grymes’ administrator had good reason to apprehend that the whole debt would be recovered of his testator’s estate, (and he says in one of his letters that when he entered into the agreement he was fully convinced of the justness of the claim,) he might well be willing to end the litigation by agreeing to pay the debt in a limited time, and out of the assets when in hand. Such a compromise, under such circumstances, could not be said to be without a sufficient consideration to sustain it. If, under such circumstances, Grymes’ administrator had confessed a decree when assets for the whole amount of the debt, the decree would have bound the estate; and there is at least as much reason in its being bound by his agreement to pay the debt when assets and after a limited period. Harrison’s executors had obtained a decree in the suit of Tomkies v. West for the settlement of Healy’s administration account on Grymes’ estate. Healy had been removed and Braxton appointed administrator in his place; and the suit *62 had been revived against the latter. Braxton was prosecuting a suit, and expecting very soon to obtain a decree, against Healy and his sureties, for a large amount of the assets of Grymes. He was fully convinced of the justness of the claim of Harrison’s ex- .... ecutors, and wished to end the litigation in Tomkies v. West, and to have sufficient time to obtain his expected decree, and realize the amount, or at least enough to pay the claim.
In this state of things, the agreement was made, and the objects which Braxton seems to have had in view were thereby secured. It stipulated that Braxton should have at least twelve months for the payment of the debt, and then should only be bound to pay it as administrator, and out of the assets when received; that upon the.payment of the money a bond of indemnity should be executed by Harrison’s legatees to Braxton; and Harrison’s executors would dismiss the suit of Tomkies v. West, as far as they were concerned, and relinquish the costs. That suit was, in effect, their suit after the decree of 1818, and the further prosecution of it was at their costs. Morris, &c. v. Terrell, 2 Rand. 6. They had a right, therefore, to stipulate for its dismission, even absolutely; and for the relinquishment of the costs. I think these stipulations constituted a sufficient legal consideration for the agreement on'the part of Grymes’ administrator. The memorandum annexed to the agreement giving Harrison’s executors the right to cancel the agreement at the end of six months, upon requiring Braxton to cancel the duplicate thereof in his possession, does not alter the case. It is not pretended that the agreement was ever in fact canceled. On the contrary, it appears that it was not, and that for nearly two years thereafter, Harrison’s executors were urging, and Braxton was promising, a compliance therewith on his part. I also think that the agreement gives, and was intended *63 to give, a new remedy thereon to Harrison’s executors for the nonperformance thereof by Grymes’ administrator, and does not leave them to resort to their as their only, remedy. Being a valid agreement, remedy thereon for a breach of it would seem to follow as a necessary consequence. An intention to preelude such a remedy, if it would not be wholly repugnant and void, ought at least to be plainly indicated, to have any legal effect. There is nothing in the agreement in question to indicate such an intention: though in reserving liberty to Harrison’s executors, in case of nonpayment of the debt at the. termination of the period stipulated, to resort to any legal means for the recovery thereof, it was doubtless intended not to extinguish the old remedy, but to give them a right to resort to the old or new at their election. The stipulation that nothing contained in the agreement should be construed to bind the administrator in any other than his representative capacity, plainly assumes that it was intended to bind him in that.
It was further contended, that no action at law could be sustained upon the agreement; that in coming into a court of equity for relief, the plaintiffs must be subjected to those principles which are applicable to a suit for specific performance; and that according to them Harrison’s executors were not entitled to relief.
It is unnecessary to decide in this case, whether an action at law could have been sustained upon the agreement. If it could, the counsel for the appellant seemed to admit that a suit in equity might have been proper to obtain an account of the assets, and have them marshaled, if necessary. But conceding that it could not, that fact would seem to strengthen, rather than weaken, the right of Harrison’s executors to come into equity for relief. It was expressly declared by the agreement that the estate of Grymes should be *64 bound for the debt, and not the administrator persona'Hy : And if) by reason of the seals annexed to the the debt could not be recovered of the es^e ^ law> surely a court of equity, which looks to substance and not form, ought, for that very cause if no other, to aiford relief; unless there be something to prevent it, in the latter part of the proposition above stated. I do not think that there is. Whatever equity Grymes’ administrator may have against Tomkies, or even against West or Healy, he can have none against Harrison’s executors. They have acted in good faith, and ask for nothing.to which they are not in conscience entitled. They are bona fide creditors of Grymes, whose estate is ample for the payment of the debt ; and yet they have been endeavoring in vain to obtain payment, for nearly fifty years since the death of Grymes, and nearly twenty-five since the date of the agreement. They have performed their part of the agreement, so far as it was to be performed before the payment of the debt; and are ready to perform the residue upon such payment. And they now ask that it may be performed on the other side. I know of no principle of equity on which relief can be denied them.
Lastly, it was contended that if Harrison’s executors were entitled to obtain relief, for the breach of the agreement, by a further prosecution of the suit of Tomkies v. West, they could obtain it only in that way, and not by a new suit on the agreement; on the principle of the case of Heywood v. Covingtons heirs, 4 Leigh 373. I do not think that principle applies to this case. There, a suit was brought in the County court for a sale and partition of real estate of an intestate among his heirs. A sale was accordingly made under a decree in the suit; and the purchaser refused to complete his purchase. Pending the suit in the County court, the heirs brought a suit against the *65 purchaser in the Superior court for specific execution. This court decided that the Superior court could not entertain the bill pending the suit in the County There the sale was made, not by the heirs by an agreement in pais ; but by a commissioner of the court; in x J . effect by the court; m a pending cause. The purchaser, by buying under a decree, had subjected himself to the orders of the court in that cause : and the appropriate and only remedy against him, at least during the pendency of the cause, was by some proceeding therein. But here, the parties to a pending cause, or some of them, enter into an agreement out of court; the main object of which is, not to prosecute the suit further, but to put an end to it. And though liberty is reserved'to Harrison’s executors, in a certain event, to resort to their original remedy, yet that was intended as a benefit to them, and not to deprive them of the right, at their election, to sue upon the agreement. I think they had not only a right to bring such a suit, but that it was a more suitable remedy, under all the circumstances, than a further prosecution of the old suit of Tomkies v. West. By the terms of the agreement that suit is to be dismissed, and the costs of Harrison’s executors therein relinquished, when the debt is paid. The court below can provide for the performance of this part of the agreement, if necessary, in the final decree which may be made in this case.
Upon the whole, I think the decree is right, and ought to be affirmed.
Samuels, J.
was of opinion that the decree should be reversed, and the bill dismissed without prejudice to the appellee’s remedy in the case of Tomkies’ adm’r v. West’s adm’r & others.
Lee, J.
was of opinion that Harrison’s executors *66 were bound to show that it was proper to perpetuate the injunction in the case of Tomkies’ adm’r v. West’s adm’r & others. That their remedy was in that suit. That the statute of limitations applied to this case. That moreover the agreement between Braxton and May as the agent of Harrison’s executors, afforded no foundation for a suit; and if it did, the circumstances under which it was made forbade a court of equity to be active in its execution: There was no consideration for the agreement, as all the debt was to be paid, and Harrison’s executors could not release the costs of the plaintiff in Tomkies’ adm’r v. West’s adm’r & others.
Allen and Daniel, Js. concurred in the opinion of Moncure, J.
Decree affirmed.